IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHARLES M. LOSINSKE,                                          OPINION and ORDER

                        Plaintiff,

                                                             3:07-cv-00185-bbc

            v.

WISCONSIN CARPENTERS' PENSION FUND,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for declaratory and monetary relief filed under the Employee Retirement Income Security Act of 1974, (ERISA) 29 U.S.C. §§ 1001-1461. Plaintiff Charles M. Losinske contends that defendant Wisconsin Carpenters' Pension Fund's decision to suspend his retirement benefit payments in 2005, 2006 and 2007 was arbitrary and capricious. Jurisdiction is present under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

This case is presently before the court on defendant's motion for summary judgment. Because defendant employed fair procedures to reach a reasonable determination that plaintiff engaged in plan-related employment in 2005 for 160 hours each month, and because plaintiff failed to exhaust administrative remedies for defendant's suspension of his benefits in 2006 and 2007, defendant's motion for summary judgment will be granted in

1

full.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties and the Plan

Plaintiff Charles M. Losinske is an adult resident of Beloit, Wisconsin. Defendant is an employee benefit trust organized and maintained under ERISA. Defendant is governed by a 22-member board of trustees that includes 11 union representatives and 11 representatives of employers in the construction industry that contribute to defendant. The trustees administer the fund in accordance with a trust agreement that authorized the creation of a pension plan and trust fund. Under the pension plan and trust fund, a retirement benefit plan was created in 1963 for union members. The plan was most recently restated on August 2, 2001 and has since been amended on various occasions.

### B. The Plan's Suspension and Appeal Provisions

Under § 9.11(a) of the plan, defendant may suspend a participant's retirement benefits if the participant continues or resumes work in "plan-related employment" which is defined as employment:

2

(1)     in an industry involving any business activities in which Employees covered by the Plan were employed at the time that the payment of Benefits for the Suspendible Participant commenced or would have commenced if the Suspendible Participant had not remained in or returned to work;

(2)     in such a Trade or Craft (as defined in 29 C.F.R. § 2530.203-3) as is covered under any collective bargaining or other written agreement requiring an Employer to make contributions to the Pension Fund and in which Trade or Craft the Suspendible Participant worked at any time while an Active Participant under the Plan, including skills learned during a period of training or practice resulting in opportunities for employment in occupations in the industry;

(3)     in either (I) the State of Wisconsin or (ii) such other geographic areas as may have been covered by any collective bargaining or other written agreement requiring an Employer to make contributions to the Pension Fund on behalf of the Suspendible Participant at the time that payment of Benefits commenced or would have commenced if the Suspendible Participant had not remained in or returned to work; and

(4)     regardless of whether such employment is subject to any collective bargaining agreement.

Under § 9.11(b) of the plan, a participant's work in plan-related employment will suspend benefits "for any calendar month in which the Suspendible Participant worked 40 or more hours after having worked 400 hours in prior months in such calendar year in plan-related employment as an employee of an employer."  Under § 9.11(c) of the plan, a rebuttable presumption arises that a participant is working 160 hours a month "[i]f a Suspendible Participant fails to notify the Trustees of his plan-related employment, and the Trustees become aware that a Suspendible Participant is working in such Employment."

3

Section 9.11(b)(1) of the plan provides that the suspension of a participant's benefits is determined on a year-by-year basis, with the plan year beginning on January 1st and ending on December 31st.  For each plan year that some or all of a participant's benefits are denied, the participant may request a review of the denial under § 9.10 of the plan.  A participant must follow and exhaust those appeal procedures before instituting any legal action concerning his or her eligibility for benefits for the plan year contested.

The plan grants the trustees "the sole and absolute discretion to construe and interpret the Plan and Trust and any or all of its provisions, rules, regulations, or procedures," "determine eligibility benefits under the Plan and Trust" and preserve "the right to ultimately decide all appeals, in their sole and absolute discretion."

These plan provisions are summarized in a "summary plan description."  Plaintiff received a copy of the 1997 summary plan description in 2001 and again in 2004 after the summary plan description was rewritten.

### C.  <u>Suspension of Plaintiff's Benefits</u>

During November and December 1976, January 1977 through January 1987, January 1987 through July 1988 and November 1989 through January 1993, plaintiff worked under a collective bargaining agreement for various employers who contributed to the fund.  Plaintiff began receiving retirement benefit payments in November 2001.  From

4

November 2001 through March 2005, plaintiff received $39,262.74 in retirement benefit payments.

In February or March 2005, defendant learned that plaintiff had been employed full-time at Custom Designed Cabinetry and Construction after his retirement.  On March 31, 2005, defendant's pension supervisor, Deborah Miller, wrote to plaintiff to inform him that his retirement benefits had been suspended because of his employment.

On May 25, 2005, plaintiff's counsel sent a letter to defendant, requesting that the Eligibility Committee review defendant's suspension of plaintiff's benefits.  Between June 27, 2005 and September 25, 2005, plaintiff's counsel provided Miller with copies of (1) IRS W-2 forms for 2002, 2003, and 2004 for work done by plaintiff for Carpentry & Contract Management, Inc. (which identify Carpentry and Contact Management's business activity as contracting); (2) checks from Carpentry and Contract Management to plaintiff for his services in 2002, 2003, 2004 and 2005; and (3) information about plaintiff's attendance at sessions on contract management, construction law, project management and leadership training conducted by the Northern Illinois Building Contractors Association and the Rock County Leadership Training Program.

Defendant's eligibility committee met on September 14, 2005 to review defendant's suspension of plaintiff's retirement benefits.  At the meeting plaintiff's counsel appeared by telephone.  The committee received plaintiff's counsel's arguments and asked him questions

5

regarding plaintiff's employment and hours.

At the close of the hearing, the eligibility committee determined that plaintiff's employment was plan-related and that plaintiff had failed to rebut the presumption that he worked 160 hours each month. However, the committee explained that it would review plaintiff's appeal again if plaintiff's counsel provided information showing that plaintiff had additional training or classes after leaving covered employment.

Plaintiff submitted the requested information regarding additional training and classes. After reviewing the information on September 28, 2005, the eligibility committee determined once again that plaintiff's employment was in the same trade or craft as defined by the plan. On October 17, 2005, defendant's administrative manager, John Thurston, notified plaintiff that the eligibility committee had denied plaintiff's appeal.

In a letter dated November 11, 2005, plaintiff appealed the eligibility committee's denial to defendant's executive committee. In his appeal, plaintiff contended that his present employment was not a "trade or craft" under 29 C.F.R. § 2530.203-3(c)(2)(ii) and the plan's definition of "trade or craft" was overly broad and not in conformity with 29 U.S.C. § 1053(a)(3)(B)(ii) and 29 C.F.R. § 2530.203-3(c)(2)(ii). In addition, plaintiff contended that his present work as a contract estimator and project manager was not a "skill" in which he engaged while employed under the plan so he could not be said to be employed in the same "trade or craft." Finally, plaintiff denied that he had worked in excess

6

of the plan's hourly limitations.

Along with his arguments, plaintiff's attorney asked defendant to produce all documents used to determine that plaintiff's retirement benefits should be suspended:

> I believe that Mr. Losinske has provided the evidence necessary to support his position in this regard but, so that he and I are clear about what the Fund's own position is, I request that the Fund produce any and all documents - including e-mails, memoranda, and notes - used by the Fund in determining that Mr. Losinske's benefits under the plan should be suspended.

On January 19 and January 20, 2006, defendant sent plaintiff's counsel copies of a handwritten note by John Merritt dated February 9, 2005 and a letter from Merritt dated March 29, 2005.   During Fed. R. Civ. P. 26(a)(1) initial disclosures in this lawsuit, defendant disclosed additional documents, including a letter with attachments from Merritt dated January 19, 2006 and several faxed letters with attachments from Merritt dated January 20, 2006.   These letters and their attachments included statements from third parties asserting that plaintiff was doing full-time work and the work was carpentry-related. Other attachments included a foreign corporation report and other reports on plaintiff's son's business, Custom Designed Cabinetry and Construction, Inc.

On January 26, 2006, defendant's board of trustees met and reviewed plaintiff's second appeal.   At the meeting, the trustees reviewed the pension board agenda and its attachments, including the letter and faxes from Merritt dated January 19 and January 20, 2006.

Plaintiff's counsel appeared before the trustees at the January 26, 2006 meeting. He argued that plaintiff spent 99.5% of his work on estimating and the other 0.5% on project management and that plaintiff did not exceed the hourly work limitations and earned only $9,000 a year. Plaintiff's counsel informed the trustees that 50% of Carpentry Contract Management, Inc.'s business was with plaintiff's son's company, Custom Design Cabinetry and Construction, Inc. When the trustees asked about the hours plaintiff worked and whether plaintiff had invoice receipts, customer bills or billing rates available, plaintiff's counsel stated that plaintiff did not record his hours and asserted that the billing rates were proprietary information.

Before deciding plaintiff's appeal, the trustees requested additional information from plaintiff, such as explanations of various entries on Carpentry Contract Management's corporate tax returns and billing rates. Plaintiff's counsel responded on February 3, 2006, stating that projects were given maximum, mid-range or lowest or discounted billing rates on a case-by-case basis depending on the type of project. Plaintiff's counsel did not provide any actual figures for plaintiff's billing rates.

On April 17, 2006, defendant renewed its request for plaintiff's financial documents and reasserted that it was plaintiff's duty to rebut defendant's presumption of full-time employment. Plaintiff's counsel responded on April 25, 2006 regarding Carpentry Contract Management's 2002 tax return and the nature of cost of goods sold on its tax returns. In

8

addition, plaintiff's counsel requested an explanation for the trustees' conclusion that plaintiff was working in the same trade or craft.

The trustees met again on April 27, 2006 and addressed plaintiff's appeal at that time. In considering plaintiff's appeal, the trustees reviewed several documents, including an assignment of ownership dated November 18, 2004, Carpentry Contract Management's 2005 tax return, correspondence from defendant's counsel and plaintiff's counsel's letters dated February 3, 2006 and April 25, 2006, in which he responded to the trustees' concerns.

After reviewing the new materials and the materials and arguments presented at the January 26, 2006 meeting, the trustees determined that plaintiff was working full-time in plan-related employment in its employment at Carpentry Contract Management. On May 31, 2006, defendant wrote plaintiff's counsel, notifying him that plaintiff's appeal had been denied because he was engaged in full-time, plan-related employment and advising plaintiff of its findings. The relevant portion of that letter states:

> Your appeal involves Sections 9.11(a)(1), 9.11(a)(2) and 9.11(b)(1). You have maintained for Mr. Losinske throughout this process that he is engaged in estimating and project management. Although the Trustees have at times suspected that Mr. Losinske spends some or all of his time actually performing construction work in the traditional sense of the word or installing cabinetry, the Trustees accept Mr. Losinske's own assertions that he is engaged in estimating for nearly 99% of his work hours and 1% in project management. The Trustees believe this activity warrants a determination that Mr. Losinske is engaged in Plan-Related Employment within the meaning of the Plan and the Law upon which they [sic] provisions are based.

9

The totality of information that has been submitted to us in review of this matter shows Mr. Losinske is the only income generating employee in a Wisconsin Corporation that he established January 1, 2002, Carpentry Contract Management, Inc. (CCM).  Ninety-nine percent of the work he does for this Company is estimating work and this work is in carpentry, custom cabinetry industries.  This work, generated gross income of $67,395 for the Company in 2005, $72,555 in 2004 and $58,450 in 2003.  No gross income figure has been submitted to us, although we requested it, for 2002.  The figures are taken from various Federal Corporate returns of CCM.  Much of the work CCM performs is for construction projects undertaken by another corporation, Custom Design Cabinetry, Inc.  Mr. Losinske has submitted Forms W-2 to substantiate what he pays himself from the company.  We have determined that this work definitely falls within the meaning of Section 9.11(a)(1).   CCM's estimating and project management work involves business activities in which Employees covered by the Plan were employed at the time Mr. Losinske's payment of retirement benefits commenced.  Employers contributing to the Fund are involved in the installation of cabinetry in businesses and residences and employees covered by the Plan were accruing benefits as a result of working in this industry.

Similarly, the Trustees find that the estimating and project management that Mr. Losinske performs is a "Trade or Craft" as defined in Section 9.11(a)(2) for two reasons.  First, the Fund received and receives contributions for estimators and project managers in the carpentry and construction industry under collective bargaining agreements and other written agreements with Employers contributing to the Fund.  This makes what Mr. Losinske is doing, a "Trade or Craft" within the meaning of Plan Section 9.11(a)(2).  Moreover, Mr. Losinske no doubt became qualified to perform his current occupation, estimating and project management, as a result of the skills he learned as a carpenter apprentice and a journeyman carpenter.  Contrary to your written assertion, the Plan would not preclude Mr. Losinske from working as a furniture salesman or tailor, as the furniture sales and tailor industries are not business activities in which employees were ever covered by the Plan.  On the other hand, Mr. Losinske is currently working in the carpentry/cabinetry industry and he uses skills developed during his apprenticeship and years working as a journeyman in his current occupation.

10

In respect to the number of hours Mr. Losinske is engaged in this work, we have directly asked for information concerning how many hours he spends performing the work he describes himself as doing. Specifically, we have asked for business records, billing invoices, time records, and even billing rates from which the Trustees would attempt to derive on their own an hours figure, based upon the above gross revenue figures of CCM. You have advised us that Mr. Losinske refuses to submit specific information on billing rates and you suggest that there are no billing records kept, something that is needed to support the gross revenue figures on the Corporate Federal Income Tax Returns of CCM, for 2003 through 2005. The crux of your argument is that the roughly eight to nine thousand dollars per year that Mr. Losinske decides to pay himself from CCM's gross revenue stream shows he is working "part-time" and that he has "carefully kept his work to levels not to exceed the Plan limitations.["]

Trustees reject these bases for appeal. Mr. Losinske has failed to supply fundamentally needed proof in which to over-come the Plan's presumption of work in excess of the hourly limitations. The Trustees do not believe the W-2 income Mr. Losinske pays himself from the service corporation, CCM, provides an accurate barometer of the number of hours he spends performing the work, especially since he is the only income producing employee of CCM. In addition to the fact that as an owner of this service corporation, Mr. Losinske himself decided and decides how much to pay himself from CCM's gross revenue derived from his work. We think division of the service corporation's gross receipts by the billing rates of the corporation, would provide a better measure of hours he spent performing this work than the arbitrary amount of wages he decided to pay himself. But because Mr. Losinske has declined to submit any billing record, any billing rate, we have determined that there is not a sufficient basis for the Trustees to determine that Mr. Losinske has rebutted the presumption that he is engaged in Plan-Related Employment for more than the Plan limits.

On approximately June 14, 2006, defendant notified plaintiff that his retirement

benefits were suspended for the 2006 plan year because it assumed that plaintiff continued

to engage in full-time, plan-related employment as defendant had found for the 2005 plan

11

year.  On or around April 1, 2007, defendant notified plaintiff that his retirement benefits were suspended for the 2007 plan year based on the continuing assumption that plaintiff was engaged in full-time, plan-related employment.  Plaintiff never requested a review of defendant's decisions to suspend benefits for 2006 and 2007.

On April 2, 2007, plaintiff filed this suit against defendant, contending that defendant's decision to suspend his retirement benefits was arbitrary and capricious.

OPINION

A.  Standard for Review

The Employee Retirement Income Security Act applies to "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both . . . ."  29 U.S.C. § 1002(1).  The parties agree that Wisconsin Carpenters' Pension Fund plan is governed by ERISA.  The denial of benefits under such a plan may be challenged pursuant to 29 U.S.C. § 1132(a)(1)(B).

The parties agree that the standard of review in this case is the deferential "arbitrary and capricious" standard because the plan gives defendant discretionary authority to determine eligibility for benefits and to construe the terms of the plan.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Militello v. Central States, Southeast and Southwest Areas Pension Fund, 360 F.3d 681, 685 (7th Cir. 2004); O'Reilly

12

v. Hartford Life & Accident Insurance Co., 272 F.3d 955 (7th Cir. 2001). Under this standard, the court must limit its review to the record available to the plan administrator at the time the decision was made, Hess v. Hartford Life & Accident Insurance Co., 274 F.3d 456, 462 (7th Cir. 2001), and defer to the plan administrator's interpretation of the plan's terms and its factual findings on that record. Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1450-51 (11th Cir. 1997).

A decision may not be set aside as arbitrary and capricious if it is "based on any reasonable interpretation of the plan." Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 658 (7th Cir. 2005). In fact, the court may reverse an administrator's decision only if it is "downright unreasonable." Ruiz v. Continental Casualty Co., 400 F.3d 986, 991 (7th Cir. 2005). For example, the court may set aside a decision as arbitrary and capricious if the administrator "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence . . . or is so implausible that it could not be ascribed to difference in view or the product of . . . expertise." Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985) (citing Motor Vehicle Manufacturers' Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983)). The court should consider the following factors: "the impartiality of the decision making body, the complexity of the issues, the process afforded the parties, the extent to which the

decision makers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination." Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir.1995).

### B. Suspension of Benefits for 2005

Plaintiff contends that defendant's determination that he was engaged in full-time plan-related employment in plan year 2005 arbitrary and capricious for three reasons: (1) defendant's review procedure was unfair; (2) defendant failed to conduct sufficient fact-finding to determine that plaintiff was working in the same "industry" and same "trade or craft"; and (3) defendant relied impermissibly on a presumption that he was employed full time.

### 1. Defendant's review procedure

Although plaintiff had several opportunities to present his arguments and evidence before defendant made a final decision, plaintiff contends that defendant's review procedure was unfair because defendant withheld certain documents from plaintiff. Under 29 U.S.C. § 1133, a participant whose claim for benefits has been denied is entitled to a "reasonable opportunity . . . for a full and fair review." In support of his argument that he did not receive such a review, plaintiff points to Brown v. Retirement Committee of the Briggs &

14

Stratton Retirement Plan, 575 F. Supp. 1073, 1076 (E.D. Wis. 1983), for an application of § 1133, in which the district court stated:

> [A] committee could act arbitrarily and capriciously by purposefully refusing to consider evidence that favored one party and basing its decision solely on evidence favorable to the other . . . . The committee cannot insulate its decision from review simply by developing a one-sided record. Rather, it has a limited duty to employ fair procedures and, if necessary, to investigate evidence bearing upon the claim.

In Brown, the committee failed to provide the plaintiff with a specific reason for its denial of her disability benefits; the committee's review involved a series of telephone conversations instead of a formal meeting; and the committee failed to consider an available doctor's report that supported the plaintiff's disability claim. Id.

Although plaintiff does not go so far as to suggest that defendant's extensive review was "cursory," he takes issue with defendant's failure to send him letters dated January 19 and January 20, 2006 after plaintiff had requested "that the Fund produce any and all documents –– including e-mails, memoranda, and notes –– used by the Fund in determining that Mr. Losinske's benefits under the plan should be suspended." Assuming plaintiff's request was a request for defendant to send him all documents it had used and intended to use, defendant should have provided plaintiff with the letters.

However, defendant's failure to provide these documents is a far cry from the situation in Brown. Even if plaintiff never had an opportunity to contest the letters directly,

15

he was given several opportunities after defendant received the withheld documents to respond to defendant's concerns.  In its March 31, 2005 letter, as well as its subsequent correspondence to plaintiff, defendant explained its reasons for suspending plaintiff's retirement benefits.  Defendant held meetings on January 26, 2007 and April 27, 2006, at which time plaintiff's counsel appeared and was given an opportunity to address the trustees' findings and present arguments and evidence.

Even if defendant's conduct were less than perfect, plaintiff received the "core requirements" of a "full and fair review" under § 1133, which include "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision."  Militello, 360 F.3d at 689 (citations omitted).  Although plaintiff did not have an opportunity to address the accuracy and reliability of the letters or their attachments, defendant did not rely upon those letters in its determination.  In their May 31, 2006 denial letter the trustees noted, "[a]lthough the Trustees have at times suspected that Mr. Losinske spends some or all of his time actually performing construction work in the traditional sense of the word or installing cabinetry, the Trustees accept Mr. Losinske's own assertions that he is engaged in estimating for nearly 99% of his work hours and 1% in project management."  The Trustees founded their determination on plaintiff's own concessions of his work, his submissions of his company's

16

taxes and his own, his failure to submit billing records and the presumption that he was working 40 hours a week. Indeed, plaintiff has adduced no evidence that he has been prejudiced in any way by defendant's failure to provide the letters.

Because defendant provided extensive review and petitioner was not deprived of any "core requirements" of a full and fair review, I conclude that defendant's failure to provide plaintiff certain letters during the review process did not make the resulting decision arbitrary and capricious.

2. Defendant's findings of fact for "same industry" and "same trade or craft"

Plaintiff contends that defendant did not perform the fact-finding necessary to determine that plaintiff's work as an "estimator" and "contractor" was in the same industry and same trade or craft as covered under the plan. First, plaintiff contends that defendant had no facts before it from which it could find that "[plaintiff']s company, CCM, is engaged in contracting in the carpentry, custom cabinetry, construction industry." Section 9.11(a) of the plan provides that a participant may not work in the same industry or "an industry involving any business activities in which Employees covered by the plan were employed at the time [of retirement]."

However, it is undisputed that 50% of Carpentry Contract Management, Inc.'s business was with plaintiff's son's company, Custom Design Cabinetry and Construction,

17

Inc. and Carpentry Contract Management's corporate tax returns for 2005 describes its business activity as "contracting."  Given the company names and the description given in the corporate tax returns, defendant's finding is hardly a leap.  Militello, 360 F.3d at 687-88 (reasonable for trustees to determine plaintiff was doing more than leasing in light of plaintiff's description of business as trucking on tax returns).

Next, plaintiff contends that defendant failed to meet special fact-finding requirements when finding that plaintiff was employed in the "same trade or craft."  Plaintiff points to 29 C.F.R. § 2530.203-3(c)(2)(ii), which states:

> [T]he determination whether a particular job classification, job description or industrial occupation constitutes or is included in a trade or craft shall be based on the facts and circumstances in each case.  Factors which may be examined include whether there is a customary and substantial period of practical, on-the-job training or a period of related supplementary instruction.

According to plaintiff, defendant did not gather enough facts about plaintiff to find his work as an "estimator" to be within the same "trade or craft," but simply assumed that plaintiff "became qualified to perform [his work as estimator and project manager] as a result of the skills he learned as a carpenter, apprentice and a journeyman carpenter."

I note that neither side bothered to propose facts regarding plaintiff's prior work as a carpenter or the skills he learned.  Neither side describes what skills are used by an "estimator" or "project manager."  However, plaintiff does not take issue with defendant's implicit determination that he learned a set of skills as a carpenter or that "estimators" or

18

"project managers" in general in the carpentry business may use carpentry skills. Instead, plaintiff's contention is simply that defendant could not have concluded that *plaintiff's* work as an "estimator" and "project manager" used carpentry skills, given such sparse facts.

Plaintiff's contention must fail because it relies on an incorrect view of the scope of the "fact-finding" requirement of 29 C.F.R. § 2530.203-3(c)(2)(ii). The requirement that the determination be "based on the facts and circumstances in each case" does not require extensive fact-finding. Although the regulation cautions against categorizing job duties rigidly according to preconceived notions of what job descriptions entail, it does not prohibit drawing inferences or using common sense when information in the participant's possession is not produced. In determining that plaintiff used carpentry skills in his work roles as an "estimator" and "project manager" in a company called Carpentry Contract Management, Inc., defendant did no more than use common sense given the facts it had.

If plaintiff had presented facts to defendant during review that put "estimator" and "manager" outside the definition of "trade or craft," defendant would not be able to disregard those facts on the basis of preconceived notions of what an "estimator" and "manager" do in the industry. However, that is not the case here. Plaintiff adduces no evidence that he ever described his work as an estimator and project manager in any detail to defendant, and he does not attempt to describe his work as an "estimator" or "manager" to this court.

19

Because defendant was entitled to apply common sense to the facts before it, defendant's determination that plaintiff was working in the carpentry industry and used carpentry skills was based on the "fact and circumstances" of the case and cannot be said to be arbitrary and capricious.

3. Presumption of full-time employment

Finally, plaintiff contends that defendant acted arbitrarily and capriciously by applying the plan's presumption that plaintiff was working 160 hours each month. Although the plan allows for such a presumption when a participant fails to report plan-related employment, 29 C.F.R. § 2530.203-3(b)(7)(ii) prohibits administrators from employing plan presumptions unless certain requirements are met, including yearly disclosure to retirees of the presumption and its effects.

Defendant does not attempt to show that it met the requirements of § 2530.203-3(b)(7)(ii). Instead, it contends that plaintiff is precluded from presenting this argument because he failed to raise it before defendant during its review of plaintiff's case. I agree.

When reviewing an administrator's decision under the arbitrary and capricious standard, the court is bound by the administrative record. Hess, 274 F.3d at 462 ("in evaluating a plan administrator's decision under an arbitrary and capricious standard of review, we should consider only the evidence that was before the administrator when it made

20

its decision"); <u>Sisters of the Third Order of St. Francis v. SwedishAmerican Group</u>, 901 F.2d 1369, 1371 (7th Cir. 1990) (argument not contested before Plan Committee was waived). Plaintiff never contested the plan's use of the presumption during defendant's review or submitted any evidence to the trustees showing that he had not received yearly disclosure as required under the regulations. Thus, plaintiff may not raise this issue now.

Even if defendant were not entitled to its presumption, it made a reasonable determination that plaintiff was employed full-time. Defendant had before it records showing that plaintiff was the only income-generating employee of Carpentry Contract Management, Inc. and that the company generated gross income of $67,395 in 2005. It would not be unreasonable to take these facts as evidence of plaintiff's full-time work, in spite of plaintiff's declared personal income of $9,000 (which he paid himself from the business). When plaintiff failed to provide billing records, rates, invoices or documentation of the hours he worked to counter that evidence, defendant had every reason to conclude he was engaged in full-time work, with or without a presumption. Defendant's decision as to which tax statements better represent plaintiff's work hours is not a decision this court may second guess or deem arbitrary and capricious. <u>Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund</u>, 900 F.2d 1138 (7th Cir. 1990). Thus, defendant's determination that plaintiff was working full-time in plan-related employment in 2005 was not arbitrary and capricious.

C.  Suspension of Benefits for 2006 and 2007

Plaintiff seeks a declaration that he is entitled to benefits not just for the 2005 plan year, but also for the 2006 and 2007 plan years because defendant suspended plaintiff's retirement benefits for 2006 and 2007 after determining that plaintiff was continuing to engage in full-time, plan-related employment.  This argument is a nonstarter because § 9.10 of the plan requires a participant to exhaust the plan's administrative review and appeal procedures for each plan year, and plaintiff never bothered to appeal defendant's 2006 and 2007 suspensions.

Plaintiff contends that the exhaustion requirements for these years are effectively waived because it would be "futile" for him to appeal for these years.  Although typically an ERISA plaintiff must exhaust his internal administrative remedies before filing suit, Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 873 (7th Cir. 1997), the exhaustion requirement does not apply "when further administrative appeal is futile."  Zhou v. Guardian Life Insurance Co. of America, 295 F.3d 677, 680 (7th Cir. 2002).  In order to qualify for the futility exception, participants "must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision."  Smith v. Blue Cross & Blue Shield United of Wisconsin, 959 F.2d 655, 659 (7th Cir. 1992).

Plaintiff simply asserts that any appeal would be denied because defendant suspended

22

plaintiff's 2006 and 2007 benefits for the same reason it suspended plaintiff's 2005 benefits: for engaging in plan-related employment.  Plaintiff never bothers to adduce evidence that he continued to work in the same capacity and the same hours or that he continued to lack evidence of his billing records or hours worked for those years.  If plaintiff had adduced such evidence, he may have established that defendant would have denied plaintiff's 2006 and 2007 appeals.  But he has not.

Plaintiff attempts to analogize his case to DePina v. General Dynamics Corp., 674 F. Supp. 46, 51 (D. Mass. 1987), in which the district court applied the futility exception because the defendant "made it apparent throughout this litigation that it intends to refuse any further claim by [plaintiff] . . . ."  That is not what defendant has done in this case. Defendant simply indicated that it was withholding plaintiff's 2006 and 2007 retirement benefits because plaintiff was continuing to engage in full-time, plan-related employment. Plaintiff could have submitted documentation or information to refute defendant's conclusion; nothing in the administrative record suggests that defendant stopped plaintiff from doing so or refused to consider materials to the contrary.

Plaintiff has failed to exhaust his administrative remedies for defendant's 2006 and 2007 suspensions of his retirement benefits.  Because the futility exception does not apply, I cannot reach the merits of that claim.

23

ORDER

IT IS ORDERED that defendant Wisconsin Carpenters' Pension Fund's motion for summary judgment is GRANTED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 19th day of December, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

24